UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FEDIE R. REDD,

                              Plaintiff,

                                                      **MEMORANDUM & ORDER**
          - against -                                 19-CV-1045 (PKC) (RML)

FEDERAL NATIONAL MORTGAGE
ASSOCIATION (FANNIE MAE), OFFICE OF
THE COMPTROLLER OF THE CURRENCY,
BANK OF AMERICA, N.A. (SUCCESSOR
BY MERGER SERVICING, TO BAC HOME
LOANS SERVICING, L.P.), BERKMAN,
HENOCH, PETERSON, PEDDY & FENCHEL
PC, SWEENEY, GALLO, REICH, & BOLZ
LLP, DAVID GALLO AND ASSOCIATES,
and BRYAN CAVE LLP,

                              Defendants.[1]
-------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Plaintiff Fedie R. Redd brings this *pro se*, fee-paid action against various Defendants,

alleging violations of federal statutes, common law, state law, and Plaintiff's constitutional rights,

in connection with the state court judgment of foreclosure on Plaintiff's property. Defendants have

moved to dismiss[2] Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).   For the reasons set forth below, the Court grants

Defendants' motions to dismiss.

─────────────────────

        [1] Plaintiff also included a Defendant "ETAL," which the Court interprets as "et al." and
does not include in the list of named parties. The Clerk of Court is respectfully directed to update
the docket accordingly.

        [2] All Defendants have moved to dismiss Plaintiff's Amended Complaint, with the
exception of the Office of the Comptroller of the Currency, which has not yet appeared in this
action. The Court nonetheless dismisses this action as to that agency, pursuant to Federal Rule of
Civil Procedure 12(b)(6).

# BACKGROUND

I.     **Relevant Facts**[3]

On or about October 18, 2007, a home mortgage loan in the amount of $310,100 was executed on Plaintiff's property, located at 173 Cedar Street, Freeport, NY 11520 (the "Property"), through a Countrywide Home Loan program that was invested in by Defendant the Federal National Mortgage Association ("Fannie Mae"). (Amended Complaint ("Am. Compl."), Dkt. 11, ¶¶ 1, 12, 16.) Plaintiff alleges that Defendant Bank of America, N.A. ("BANA"), as the successor by merger to Countrywide Financial ("Countrywide"), sold this fraudulent, defective loan to her because she is an African-American female. (*Id.* ¶ 33.) Plaintiff alleges that the Office of the Comptroller of the Currency (the "OCC") violated federal law when, on April 23, 2009, it conditionally approved the merger of BANA and Countrywide. (*Id.* ¶ 18.) On or before October 7, 2010, Defendant Berkman, Henoch, Peterson, Peddy, & Fenchel PC ("Berkman") filed fraudulent paperwork in a foreclosure action against Plaintiff in Nassau County Supreme Court while representing BANA. (*Id.* ¶ 22.) On or before April 2013, BANA hired Sweeney, Gallo, Reich, & Bolz LLP ("Sweeney") or David A. Gallo and Associates ("DAGA")[4] while Berkman was "already representing" BANA, constituting "fraudulent representation." (*Id.* ¶ 24.) On April 14, 2014, the aforementioned foreclosure action was discontinued in Nassau County, and Sweeney

---

[3] The Court assumes the truth of the Amended Complaint's non-conclusory factual allegations. *See Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).

[4] Now named Sweeney, Reich, & Bolz LLP, the firm notes that the named Defendant Sweeney, Gallo, Reich, & Bolz LLP, ceased to exist as of 2015. (*See* Dkt. 47, at 1–2.) Sweeney argues that DAGA is the firm formerly known as Sweeney, Gallo, Reich, & Bolz LLP, and, thus, that Sweeney should not be a party to this action. Per its discussion *infra*, the Court need not resolve this issue, as it finds that Plaintiffs' claims against all limited partnership Defendants— including both DAGA and Sweeney—must be dismissed.

recovered $554,581.36 for BANA in a separate foreclosure proceeding[5] (*id.* ¶¶ 38, 39). Plaintiff alleges that BANA failed to deduct accumulated interest and Plaintiff's homeowner's insurance from this fee amount, and that BANA held and "refused to issue" $158,000 of equity to Plaintiff for six months. (*Id.* ¶¶ 42, 44.) Plaintiff separately alleges that BANA violated its fiduciary duties to Plaintiff when it signed off on the "notice of proposed referee's oath and computation," charging Plaintiff fees from April 1, 2010 through October 19, 2017. (*Id.* ¶ 37.) Plaintiff alleges another instance of fraudulent representation whereby BANA hired Bryan Cave LLP[6] ("Bryan Cave") from July 2013 to 2017, when Berkman was still BANA's attorney of record. (*Id.* ¶ 26.) On April 10 and 11, 2017, BANA directed Safeguard Properties to enter the Property and remove $30,000 worth of Plaintiff's belongings. (*Id.* ¶ 48.) Plaintiff further claims that, on November 12, 2018, DAGA submitted defective pleadings in the Nassau County Supreme Court under an incorrect index number. (*Id.* ¶ 48.) Plaintiff brings various federal[7] and state law claims (*id.* at 5, 6), and requests both equitable relief (*id.* at 25) and $12,310,000 in damages (*id.* at 26).

## II.    Procedural History

Plaintiff filed the instant action on February 21, 2019 (Complaint, Dkt. 1) and amended her complaint the following day (Amended Complaint, Dkt. 11). On March 18, 2019, Defendants BANA, Bryan Cave, and Fannie Mae sought a pre-motion conference to dismiss Plaintiff's

---

[5] In this proceeding, initiated on July 5, 2013, a judgment of foreclosure and sale was issued on January 25, 2019. *See Bank of Am., N.A. v. Redd*, Index No. 0007276/2013 (N.Y. Sup. Ct. Nassau Cty.).

[6] Per the parties' submissions, the Court notes that the firm's name is now Bryan Cave Leighton Paisner LLP. (Dkt. 25, at 1.)

[7] Plaintiff brings federal statutory claims under 42 U.S.C. §§ 1983 and 1985, the Truth in Lending Act, the Racketeer Influenced and Corrupt Organizations Act, the Real Estate Settlement Procedures Act, the Fair Housing Act, the Equal Credit Opportunity Act, and the Fair Credit Reporting Act.

Amended Complaint. (Dkt. 25.) Defendant DAGA requested a pre-motion conference to dismiss Plaintiff's Amended Complaint on March 20, 2019 (Dkt. 26), and Defendant Sweeney filed a similar request on March 26, 2019 (Dkt. 29). Plaintiff replied in opposition on March 27, 2019. (Dkt. 31.) On March 29, 2019, Plaintiff requested Certificates of Default as to Berkman and Sweeney (Dkts. 32, 34); the Court denied the request as to the latter because Sweeney had already appeared, and Berkman subsequently filed a notice of appearance on April 11, 2019 (Dkts. 41, 42). By Order dated April 1, 2019, the Court construed Defendants' requests for a pre-motion conference (Dkts. 25, 26, 29) as motions to dismiss, permitted any additional Defendants to file separate motions to dismiss, construed Plaintiff's opposition as her initial response to Defendants' motions, and set a briefing schedule for the parties. Defendants Berkman (Dkt. 43), DAGA (Dkt. 45), and Sweeney (Dkt. 47) filed motions to dismiss. Before the Court are Defendants' motions to dismiss (Dkts. 25, 26, 29, 43, 45, 47), Plaintiff's "omnibus opposition letter" to Defendants' motions (Dkt. 48), and Defendants' replies (Dkts. 46, 49, 50, 51).

## STANDARDS OF REVIEW

### I.  Federal Rule of Civil Procedure 12(b)(1)

The district courts of the United States are "courts of limited jurisdiction" and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation and citation omitted). "[B]ecause [subject matter jurisdiction] involves a court's power to hear a case, [it] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Federal district courts have "original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and the amount in controversy are met, *see* 28 U.S.C. § 1332." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir.

2013). "A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Music Choice v. Claggett*, 385 F. Supp. 3d 245, 248 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A court deciding a motion to dismiss under Rule 12(b)(1) must accept as true the allegations in the complaint and, in the event of a fact-based jurisdictional challenge under Rule 12(b)(1), may consider extrinsic materials submitted by both parties beyond the allegations in the complaint. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 118, 119 (2d Cir. 2017).

## II.     Federal Rule of Civil Procedure 12(b)(2)

In order to survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff bears the burden to establish that the court has personal jurisdiction over the parties. *See Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). "[W]hen the issue of personal jurisdiction is 'decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case.'" *King County, Washington v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)). In deciding whether a plaintiff has met this burden, the court must view the pleadings and affidavits in the light most favorable to the plaintiff, with all doubts resolved in the plaintiff's favor. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

## III.    Federal Rule of Civil Procedure 12(b)(5)

"For a federal court to exercise personal jurisdiction over a defendant, 'the plaintiff's service of process upon the defendant must have been procedurally proper.'" *Westchase*

*Residential Assets II, LLC v. Gupta*, No. 14-CV-1435 (ADS) (GRB), 2016 WL 3688437, at *2 (E.D.N.Y. July 7, 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)); *see also Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2003) (summary order) ("A judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected." (citation omitted)). To survive a motion to dismiss for insufficient service of process under Rule 12(b)(5), "the plaintiff bears the burden of establishing that service was sufficient." *Allstate Ins. Co. v. Rosenberg*, 771 F. Supp. 2d 254, 260 (E.D.N.Y. 2011) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order)).

## IV.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citation omitted). A complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## V.    *Pro Se* Pleadings

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citation omitted). Accordingly, courts in this Circuit read *pro se* complaints with "special solicitude" and interpret them to raise "the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted).

## DISCUSSION

## I.    Personal Jurisdiction (as to Defendants Berkman, Bryan Cave, DAGA, and Sweeney)

Defendants Berkman, Bryan Cave, DAGA, and Sweeney argue that Plaintiff's claims against them must be dismissed for insufficient service of process, pursuant to Rule 12(b)(5), and lack of personal jurisdiction, pursuant to Rule 12(b)(2). (*See* Dkt. 43, at 3; Dkt. 45, at 1–2; Dkt. 46, at 1–2; Dkt. 47, at ECF[8] 4.) Plaintiff has submitted Affidavits of Service as to these Defendants indicating that the process server "mailed by United States Postal Service a copy of the summons and complaint" to each of these Defendants "by certified mail." (*See* Dkts. 14, 21, 22, 23.)

"Before addressing Defendants' Rule 12(b)(6) motion to dismiss, the Court must first address the preliminary questions of service and personal jurisdiction." *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citation omitted). Generally, service of process in a federal lawsuit is governed by Rule 4 of the Federal Rules of Civil Procedure. Under Federal Rule of Civil Procedure 4(h), a summons properly served on a corporation, partnership, or association in a judicial district must be served either according to the law of the state where the

---

[8] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

district court is located or where service is made, *see* Fed. R. Civ. P. 4(h)(1)(A), or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent" of the entity, *see* Fed. R. Civ. P. 4(h)(1)(B). As Plaintiff has not demonstrated compliance with the latter rule, the Court looks to New York Civil Practice Law and Rules ("CPLR").

### A.     Service of Process Pursuant to CPLR § 310-a (DAGA and Sweeney)

Defendants DAGA and Sweeney are limited partnerships,[9] for which service of process rules are as follows:

> Personal service upon any domestic or foreign limited partnership shall be made by delivering a copy personally to any managing or general agent or general partner of the limited partnership in this state, to any other agent or employee of the limited partnership authorized by appointment to receive service or to any other person designated by the limited partnership to receive process, in the manner provided by law for service summons, as if such person was the defendant.

N.Y. C.P.L.R. § 310-a(a). DAGA and Sweeney maintain that Plaintiff failed to properly serve them under CPLR § 310-a because Plaintiff served them only via United States Postal Service ("USPS") certified mail.

"When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (internal quotation and alterations omitted). "'Conclusory statements' that service was properly effected are insufficient to carry that burden." *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 173 (E.D.N.Y. 2015) (quoting *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005)).

---

[9] DAGA and Sweeney have each provided entity information establishing that they are domestic limited liability partnerships. (*See* Dkts. 47-4, 47-3, respectively.)

Here, Plaintiff offers no more than conclusory statements that her method of service was proper, with citations to rules with requirements that she has not satisfied. Plaintiff points to CPLR §§ 310(b)[10] and 310(e), seemingly to argue that she has abided by the former and, if not, that the latter operates as a catch-all whereby, "[i]f service is impracticable under subdivisions (a), (b) and (c) of this section, it may be made in such manner as the court, upon motion without notice directs." (Plaintiff's Omnibus Opposition Letter ("Pl.'s Opp."), Dkt. 48, at 5, 7 (quoting N.Y. C.P.L.R. § 310(e)).) However, Plaintiff has clearly failed to comply with the requirements of § 310(b), and § 310(e) does not allow for Plaintiff's form of service where she has not made a motion or received direction from the Court. Plaintiff further relies on CPLR § 306(e)[11] to argue for the validity of her method of service (*id.*), but neither DAGA nor Sweeney has filed a writing admitting service.

Accordingly, the Court finds that Defendants DAGA and Sweeney were not properly served pursuant to the CPLR.[12]

---

[10] This subsection reads, in full:

> Personal service upon said partnership may also be made within the state by delivering the summons to the managing or general agent of the partnership or the person in charge of the office of the partnership within the state at such office and by either mailing the summons to the partner thereof intended to be served by first class mail to his last known residence or to the place of business of the partnership. Proof of such service shall be filed within twenty days with the clerk of the court designated in the summons; service shall be complete ten days after such filing; proof of service shall identify the person to whom the summons was so delivered and state the date, time of day and place of service.

N.Y. C.P.L.R. § 310(b).

[11] This subsection reads, in full: "A writing admitting service by the person to be served is adequate proof of service." N.Y. C.P.L.R. § 306(e).

[12] Service of process on a New York-based limited partnership may also be made according to New York Partnership Law § 121-109, which allows service of process on the secretary of state as agent of a limited partnership "by personally delivering" copies of such process along with the statutory fee to "him or his deputy, or with any person authorized by the secretary of state to receive

## B. Service of Process Pursuant to CPLR § 311 (Berkman and Bryan Cave)

Defendants Berkman (Dkt. 43, at 3) and Bryan Cave (Dkt. 46, at 1–2) maintain that Plaintiff did not properly serve them pursuant to CPLR § 311, which governs service of process for corporations and governmental subdivisions. *See* N.Y. C.P.L.R. § 311.

In response, Plaintiff points to CPLR § 311(a)(1)[13] and to New York Business Corporation Law § 306(d) to establish that her method of service was proper.[14] (Pl.'s Opp., Dkt. 48, at 1.) But Plaintiff has again failed to meet her burden of showing proper service under the requirements of these rules, given that Plaintiff's Affidavits of Service for Berkman (Dkt. 23) and Bryan Cave (Dkt. 22) show only that copies of the summons and complaint were sent to each Defendant by certified mail. Plaintiff again relies on CPLR § 306(e) to argue for the validity of her service (Pl.'s Opp., Dkt. 48, at 1[15]), but neither Berkman nor Bryan Cave has filed a writing admitting service. Plaintiff's conclusion that, "[t]herefore, the Defendants were properly served, and the United States Eastern District Court does have personal jurisdiction" (*id.*), is precisely the type of

---

such service, at the office of the department of state in the city of Albany." N.Y. P'ship Law § 121-109(a)(1). Plaintiff neither alleges nor offers evidence to suggest that she personally delivered copies of the summons and complaint to the secretary of state.

[13] This subsection allows for service "upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service" and also permits that a business corporation "be served pursuant to [§§ 306] or [307] of the business corporation law." N.Y. C.P.L.R. § 311(a)(1). As relevant in this action, § 306 of the business corporation law allows for service of process on the secretary of state as agent, *see* N.Y. Bus. Corp. Law § 306(b)(1), which Plaintiff has not shown.

[14] This subsection reads, in full: "Nothing in this section shall affect the right to serve process in any other manner permitted by law." N.Y. Bus. Corp. Law § 306(d).

[15] Plaintiff's opposition only rebuts the improper service argument as to Bryan Cave and does not address Berkman; the Court liberally construes Plaintiff's opposition to apply to Berkman as well.

"conclusory statement" of proper service of process that cannot carry her burden. *See Blau*, 124 F. Supp. 3d at 173.

Accordingly, the Court finds that Defendants Berkman and Bryan Cave were not properly served under the CPLR.

**C.     Service of Process Pursuant to CPLR § 312**

In addition, the Court notes that Plaintiff has not properly served any of Defendants Berkman, Bryan Cave, DAGA, or Sweeney pursuant to CPLR § 312-a, which provides that:

> As an alternative to the methods of personal service authorized by section 307, 308, 310, 311, or 312 of this article, a summons and complaint . . . may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint . . . together with two copies of a statement of service by mail and acknowledgement of receipt . . . .

N.Y. C.P.L.R. § 312-a(a). Here, Plaintiff did not send the summons and complaint by first class mail and also has not shown that she included two copies of a statement of service by mail and acknowledgement of receipt. These deficiencies render Plaintiff's service of process on these Defendants defective. *See, e.g.*, *Conway v. Am. Red Cross*, No. 10-CV-1859 (SJF) (ARL), 2010 WL 4722279, at *3 (E.D.N.Y. Nov. 15, 2010) (finding that, where plaintiff "mailed the summons and amended complaint by certified mail, return receipt requested to [defendant]," plaintiff did not "satisfy either the federal or state statutory requirements" of Rule 4 and CPLR §§ 308 and 312-a, respectively); *Hsu v. Shields*, 974 N.Y.S.2d 800 (N.Y. App. Div. 2013) (Mem) ("Contrary to the plaintiffs' contention, sending multiple copies of the summons with notice and complaint by regular mail and by Federal Express to the defendants at their place of business did not constitute proper service [pursuant to CPLR §§ 308(2) and 310-a]."); *Klein v. Educ. Loan Serv., LLC*, 897 N.Y.S.2d 220, 221–22 (N.Y. App. Div. 2010) (finding improper service where plaintiff served

defendants solely by certified mail, return receipt requested, thereby failing to comply with the requirements of CPLR § 312-a for personal service by mail).[16]

Lastly, and to the extent Plaintiff might rely on the fact that Defendants Berkman, Bryan Cave, DAGA, and Sweeney received actual notice of the suit and still appeared to contest this action, such reliance is misplaced. In this Circuit, "[a]ctual notice alone will not sustain the service or subject a person to the court's jurisdiction when there has not been compliance with prescribed conditions of service." *Buggs v. Ehrnschwender*, 968 F.2d 1544, 1548 (2d Cir. 1992) (quoting *Markoff v. S. Nassau Cmty. Hosp.*, 461 N.E.2d 1253, 1255 (N.Y. 1984)); *see also Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 441 (S.D.N.Y. 2012) ("[A]ctual notice cannot 'cure a failure to comply with the statutory requirements for serving process.'" (quoting *Sartor*, 70 F. App'x at 13)). Thus, these Defendants' actual receipt of, and appearance to move to dismiss, Plaintiff's Amended Complaint, do not affect the Court's conclusion that Plaintiff has failed to satisfy the applicable rules for service of process.

\*     \*     \*

In sum, Plaintiff has failed to make a *prima facie* showing that this Court has personal jurisdiction over Defendants Berkman, Bryan Cave, DAGA, or Sweeney. Accordingly, the Court grants dismissal of Plaintiff's claims as to these Defendants for insufficient service of process, pursuant to Rule 12(b)(5), and lack of personal jurisdiction, pursuant to Rule 12(b)(2).

---

[16] The Court observes, too, that Plaintiff, though proceeding *pro se*, is familiar with the requirements of service of process, as she has failed to effectuate proper service in an action in this District before, resulting in dismissal of her claims against that defendant. *See Redd v. Leftenant*, No. 16-CV-4919 (JFB) (SIL), 2017 WL 9487173, at *8 (E.D.N.Y. Aug. 9, 2017) (dismissing Plaintiff's claims against defendant for improper service under CPLR § 308(2)), *report and recommendation adopted*, 2017 WL 3973926 (E.D.N.Y. Sept. 7, 2017).

## II.    *Rooker-Feldman* **Doctrine**

Defendants Fannie Mae and BANA move to dismiss Plaintiff's claims relating to the foreclosure on the Property for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. (Dkt. 25, at ECF 2.) The *Rooker-Feldman* doctrine provides that "federal district courts lack subject matter jurisdiction to hear 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Jaoude v. Hannah*, 589 F. App'x 6, 6 (2d Cir. 2014) (summary order) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005)). The Second Circuit has outlined four requirements for application of the *Rooker-Feldman* doctrine:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005) (internal quotations and alterations omitted).

Here, each of these requisite conditions is met with regard to Plaintiff's request for injunctive and declaratory relief. First, Plaintiff lost her foreclosure action in state court. (*See* Am. Compl., Dkt. 11, ¶ 48.[17]) Second, a number of Plaintiff's injuries were caused by the state court judgment of foreclosure. (*See id.* at 25.) Third, Plaintiff requests that the Court "[s]top the judgment of sale and foreclosure until after a jury trial in this Court." (*Id.*) And, fourth, the state

___

[17] While Plaintiff's Amended Complaint does not indicate the date of judgment in the Nassau County Supreme Court, Defendants have included documentation of that date (*see* Dkt. 47-5), and Plaintiff's reply includes an exhibit indicating that a judgment of foreclosure was ordered on January 25, 2019 (Exhibit A, Dkt. 48-1, at ECF 8).

court judgment of foreclosure was ordered on January 25, 2019, before this action was commenced in federal court on February 21, 2019. For these reasons, *Rooker-Feldman* applies to bar Plaintiff's requested equitable relief. *See, e.g.*, *Worthy-Pugh v. Deutsche Bank Nat'l Tr.*, 664 F. App'x 20, 21 (2d Cir. 2016) (summary order) (finding that the district court lacked jurisdiction to void a state court judgment of foreclosure); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (finding that *Rooker-Feldman* barred plaintiff's claim that the state court judgment on his foreclosure was fraudulently obtained); *Murphy v. Riso*, No. 11-CV-873 (JFB) (ARL), 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) ("[N]umerous courts in this Court [] have consistently held that attacks on a judgment of foreclosure are barred by the *Rooker-Feldman* doctrine.").

Plaintiff maintains that she is not requesting that the Court overturn the state court foreclosure action (Letter to the Court, Dkt. 44, at 2, 3) and, rather, that her claims address Defendants' "[c]ivil [r]ights violations against her" (*id.* at 2). This Circuit has held that claims may survive where they "alleg[e] harm flowing from wrongful conduct" and do "not function as a *de facto* appeal" of a state court judgment. *Cho v. City of New York*, 910 F.3d 639, 647 (2d Cir. 2018). As such, Plaintiff's claims that "merely seek[] damages based on Defendants' alleged independent wrongful conduct," instead of seeking to overturn a state court judgment, are not necessarily barred by *Rooker-Feldman*. *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *4 (S.D.N.Y. Aug. 22, 2016); *see also Worthy-Pugh*, 664 F. App'x at 21 ("The *Rooker-Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment[.]" (citation omitted)). Accordingly, the Court denies Plaintiff's requested equitable relief, but considers Plaintiff's remaining claims insofar as they do not request reversal of the state court judgment on foreclosure.

### III.    Federal Claims for Monetary Damages

#### A.    Truth in Lending Act Claim

Plaintiff alleges a general violation of the Truth in Lending Act ("TILA"), whereby Defendant BANA "failed to notify [Plaintiff] in writing of the transfer of her mortgage loan" to BANA upon its merger with Countrywide. (Am. Compl., Dkt. 11, ¶ 14E.) A private right of action under TILA arises on the date of the occurrence of the alleged violation, and, under 15 U.S.C. § 1640(e), a claim for damages must be brought within one year from that date. *See Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 12 (2d Cir. 2018) (summary order); *see also Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 285 (S.D.N.Y. 2011) (collecting cases). For a mortgage loan, the date of the occurrence is either when the plaintiff enters the loan agreement or when the defendant transmits the funds. *See Latouche*, 752 F. App'x at 13. Here, Plaintiff's loan was executed on October 18, 2007 and allegedly transferred to Defendant BANA on or before April 23, 2009.[18] (*See* Am. Compl., Dkt. 11, ¶ 20.) Accordingly, any possible violations of TILA are well outside the limitations period, and this claim is dismissed.

#### B.    Real Estate Settlement Procedures Act Claim

Plaintiff also alleges that Defendant BANA violated the Real Estate Settlement Procedures Act ("RESPA"). (*Id.* ¶ 14H.) Plaintiff's conclusory allegation does not state a claim under a particular subsection of RESPA, but the Court liberally construes her claim as an alleged violation of 12 U.S.C. § 2605, based on BANA's alleged failure to provide notice to Plaintiff that her loan had been assigned from Countrywide to BANA. Even assuming, *arguendo*, that Plaintiff states a valid claim under this section of RESPA, her claim is time-barred by RESPA's three-year statute

---

[18] The Court notes that Plaintiff acknowledges that she was aware of the merger of BANA and Countrywide on April 23, 2009. (*See* Am. Compl., Dkt. 11, ¶ 18 (alleging that the OCC violated federal law by conditionally approving the BANA-Countrywide merger).)

of limitations. *See* 12 U.S.C. § 2614 (noting three-year statute of limitations period for § 2605). As previously discussed, the events that could constitute the RESPA violation took place, at the latest, on or about April 23, 2009. Accordingly, Plaintiff's RESPA claim is dismissed.

### C.     Fair Housing Act Claim

Plaintiff next alleges that Defendant BANA violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3605, by "discriminat[ing] against [Plaintiff] based upon her race as an African American and her gender as a female." (Am. Compl., Dkt. 11, ¶ 14G.) A plaintiff asserting a claim under the FHA must allege facts showing: "(1) that [she is a] member[] of a protected class; (2) that [she] sought and w[as] qualified to rent or purchase the housing; (3) that [she] w[as] rejected; and (4) that the housing opportunity remained available to other renters or purchasers." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). Here, Plaintiff has at best alleged only the first element of a valid FHA claim and makes no allegations to support a showing of the other three required elements. Indeed, as alleged in her Amended Complaint, Plaintiff was not rejected with respect to the purchase of the Property. Furthermore, even assuming, *arguendo*, that Plaintiff has stated a valid FHA claim, such a claim would be time-barred by the FHA's two-year statute of limitations for the commencement of a civil action from the date of the allegedly discriminatory housing practice. *See* 42 U.S.C. § 3613(a)(1)(A). Regardless of whether the alleged discriminatory housing practice occurred when the loan was executed on October 18, 2007, or when BANA assumed the loan on or before April 23, 2009, Plaintiff's FHA claim would be time-barred. Plaintiff's FHA claim is, therefore, dismissed.

### D.     Equal Credit Opportunity Act Claim

Plaintiff next alleges that Defendant BANA violated the Equal Credit Opportunity Act ("ECOA") when it sold to Plaintiff a "subprime, toxic, and predatory" mortgage loan. (Am.

Compl., Dkt. 11, ¶ 14F.) Plaintiff, however, states no facts in her Amended Complaint to support this conclusory allegation regarding the nature of the loan and Defendant BANA's motivations for issuing it—which, standing alone, fails to state an ECOA claim. *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2015) (holding that, in order to state a claim under ECOA, a plaintiff "must make factual allegations that support a reasonable inference that defendants were motivated by discriminatory animus"). Furthermore, even had Plaintiff stated a valid ECOA claim, such a claim would be time-barred under ECOA's five-year statute of limitations, which began to run, at the latest, on October 18, 2007, when Plaintiff's home mortgage loan was executed. *See* 15 U.S.C. § 1691e(f) (providing that no private action "shall be brought later than 5 years after the date of the occurrence of the violation"); *Gordon v. First Franklin Fin. Corp.*, No. 16-CV-0775 (SJF) (AKT), 2016 WL 792412, at *9 (E.D.N.Y. Feb. 29, 2016) (noting that ECOA statute of limitations begins "at the time of the challenged loan transaction"). Plaintiff's ECOA claim is, therefore, dismissed.

### E.    Equitable Tolling (FHA and ECOA Claims)

Plaintiff argues that equitable tolling should extend to her federal discrimination claims under the FHA and ECOA because of Defendant BANA's "continuing violation" of the statutes. (Pl.'s Opp., Dkt. 48, at 2–3.)

"The continuing violation doctrine applies when a plaintiff challenges not just one incident of conduct violative of [an act], but an unlawful practice that continues into the limitations period." *Grimes*, 785 F. Supp. 2d at 291–92 (internal quotation and citation omitted). For a statute of limitations to be extended under the continuing violation doctrine, "a plaintiff must demonstrate that the alleged discrimination was 'not just an isolated violation, but an ongoing policy of discrimination which extend[s] into the limitations period.'" *Favourite v. 55 Halley St., Inc.*, 381

F. Supp. 3d 266, 278–79 (S.D.N.Y. 2019) (additional citation omitted) (quoting *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 373 (E.D.N.Y. 2012)). "Where there are continuing violations that give rise to a claim of a discriminatory policy, the statute of limitations period does not begin to run until the end of the 'last asserted occurrence' of a discriminatory policy." *Clement*, 914 F. Supp. 2d at 373 (additional citation omitted) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 363 (1982)). Courts in this Circuit "have been loath to apply the continuing violation doctrine absent a showing of compelling circumstances." *Grimes*, 785 F. Supp. 2d at 292 (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)).

Here, Plaintiff has failed to adequately plead a continuing violation of either the FHA or ECOA, for she asserts only that "the continuing violation is that her mortgage was originated and assigned into a discriminatory mortgage loan." (Pl.'s Opp., Dkt. 48, at 2–3). This vague and conclusory statement does not allege an "ongoing policy of discrimination," *Favourite*, 381 F. Supp. 3d at 278–79, against Plaintiff by Defendant BANA, nor does it specify the "last asserted occurrence" of such a policy, *Clement*, 914 F. Supp. 2d at 373. Similarly, Plaintiff's general allegation that Defendant BANA engaged in "continuous reverse[-]redlining and prohibited conduct" (Pl.'s Opp., Dkt. 48, at 2) does not allege "specific instances of other discriminatory acts, nor dates on which this conduct purportedly began or concluded." *Grimes*, 785 F. Supp. 2d at 295. Accordingly, the Court concludes that Plaintiff's FHA and ECOA claims do not warrant equitable tolling under the continuing violation doctrine.

## F. Racketeer Influenced and Corrupt Organizations Act Claims

Plaintiff alleges a number of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), arising from BANA's 2010 hiring of Berkman (Am. Compl., Dkt. 11, ¶ 14J), BANA's 2013 hiring of Sweeney (*id.* ¶ 14L), BANA's 2013 hiring of DAGA (*id.*

¶ 14M), BANA's 2017 hiring of DAGA (*id.* ¶¶ 14O, 14AA), BANA's sending Safeguard Properties into Plaintiff's home in April 2017 (*id.* ¶¶ 14Q, 14R, 14S), BANA's allowing Berkman, Bryan Cave, DAGA, and Sweeney to charge "exorbitant legal fees" (*id.* ¶¶ 14Y, 14Z), BANA's attestation that DAGA was BANA's attorney of record from 2013 to 2017 (*id.* ¶ 14BB), BANA's "fraudulently sign[ing] off on the notice of proposed referee's oath and computation" (*id.* ¶¶ 37, 39, 41, 42, 43, 44), and BANA's "ruin[ing] [Plaintiff's] credit for seven years" (*id.* ¶ 46).

RICO contains a criminal provision, *see* 18 U.S.C. § 1962, and a civil provision, *see* 18 U.S.C. § 1964, which provides a private right of action. The civil provision permits the recovery of treble damages and reasonable attorney's fees for any person who is "injured in [her] business or property by reason of a violation of" the criminal provision. 18 U.S.C. § 1964(c). To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the [criminal] RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). To satisfy the first element, a plaintiff must plausibly allege "that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." *Id.* at 306. "[C]ourts should look 'with particular scrutiny' at civil RICO claims to ensure that the RICO statute is used for the purposes intended by Congress." *Purchase Real Estate Grp., Inc. v. Jones*, No. 05-CV-10859 (LAP), 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (quoting *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000)).

Here, Plaintiff makes only conclusory allegations that Defendant BANA violated RICO by hiring various law firms, acting fraudulently in the state court litigation, and directing Safeguard

Properties to remove Plaintiff's belongings from the Property. Plaintiff does not allege facts showing any of the required elements for a civil RICO claim with respect to any of BANA's actions. Accordingly, Plaintiff's RICO claims are dismissed.

### G. Fair Credit Reporting Act Claim

Plaintiff alleges that Defendant BANA violated the Fair Credit Reporting Act ("FCRA") for having "already ruined the [Plaintiff's] credit for seven years." (Am. Compl., Dkt. 11, ¶¶ 14DD, 46.) The FCRA "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 15 U.S.C. § 1681(b)). To this end, the FCRA outlines the responsibilities of those entities that furnish information to consumer reporting agencies. *See* 15 U.S.C. § 1681s-2. Here, because Plaintiff makes only a vague, conclusory allegation without reference to specific events or actions, or even to a specific subsection of the FCRA, the Court cannot determine any theory of liability under the statute. Accordingly, Plaintiff's FCRA claim must be dismissed.

### H. Section 1983 and Section 1985 Claims

Plaintiff generally alleges that Defendant BANA violated 42 U.S.C. §§ 1983 and 1985, and specifically alleges a violation based on BANA having "sen[t] Safeguard Properties into [P]laintiff's home" to "illegally lock and remove [Plaintiff] and her belongings" on April 10 and 11, 2017. (Am. Compl., Dkt. 11, ¶¶ 14C, 14P.) Plaintiff also alleges that Defendant BANA violated Plaintiff's rights under the Fifth, Seventh, Ninth, and Fourteenth Amendments of the United States Constitution. (*Id.* ¶¶ 14B, 28.)

### 1.    Section 1983

Claims for violations of constitutional rights are cognizable under 42 U.S.C. § 1983, which provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. 42 U.S.C. § 1983. "[T]he core purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (internal quotation omitted). As such, § 1983 "constrains only [government] conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat. Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)).

In order to succeed on her § 1983 claims, Plaintiff must, as a threshold matter, establish that the challenged conduct of Defendants was taken under color of state law. "The traditional definition of acting under color of state law requires that the defendant . . . have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (citation omitted). This Circuit has recognized three scenarios in which the conduct of a nominally private entity may be attributed to the state:

> (1) [where] the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Prog., Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alterations in original) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Here, Plaintiff fails to allege that Defendant BANA's actions are "fairly attributable to the State[,]" or any facts from which to infer the same. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). Plaintiff's allegation that Defendant BANA committed a violation of § 1983 when it directed Safeguard Properties to remove Plaintiff's belongings from the Property in April 2017 concerns the actions of two private parties, and Plaintiff does not allege in a non-conclusory fashion that BANA and Safeguard Properties acted under color of state law. In addition, "[c]laims under § 1983 are governed by a three-year statute of limitations in New York." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). Thus, any actions taken by Defendant BANA in 2007 or 2009 cannot form the basis of a § 1983 claim. Accordingly, Plaintiff's § 1983 claims are dismissed.

## 2. Section 1985

As applicable in the instant action, § 1985 "permits an individual to bring suit for injuries incurred due to conspiracies formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Roffman v. City of New York*, No. 01-CV-8601 (AGS), 2002 WL 31760245, at *5 (S.D.N.Y. Dec. 10, 2002) (citing 42 U.S.C. § 1985(3)). To state a claim under § 1985(3), a plaintiff must allege

> four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (summary order) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828–29 (1983)). "In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such

that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (internal quotation and citations omitted). Section 1985 claims have a three-year statute of limitations, accruing "when the plaintiff knows or has reason to know of the injury which is the basis of [her] action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation omitted).

Plaintiff's Amended Complaint is plainly devoid of factual allegations demonstrating that there was such a conspiracy in the context of Defendant BANA's 2009 merger with Countrywide. Moreover, even had Plaintiff made out a plausible § 1985 claim with regard to the 2009 merger, such a claim would be time-barred by the three-year statute of limitations. Plaintiff also does not sufficiently allege a § 1985 claim with regard to Defendant BANA directing Safeguard Properties to remove Plaintiff's belongings from the Property, as Plaintiff does not provide any "factual basis supporting a meeting of the minds." *Webb*, 340 F.3d at 111. Lastly, Plaintiff alleges no facts from which to infer a "purpose [by BANA or any other Defendant] of depriving, either directly or indirectly, [Plaintiff] . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." *Robinson*, 508 F. App'x at 9. Accordingly, Plaintiff's claim under § 1985 is dismissed.

## IV. Supplemental Jurisdiction over State Law Claims

Because the Court has dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's common and state law claims, alleging breach of fiduciary duty as to BANA (Am. Compl., Dkt. 11, ¶¶ 14A, 14D, 14I, 14Q, 14T, 14U–14W), violation of New York Banking Law § 6-M(2) (*id.* ¶ 14X), violation of CPLR Rule 3408 (*id.* ¶ 14N), and violation of the New York six-year statute of limitations for foreclosure actions (*id.* ¶ 14EE). *See Cave v. E Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We

have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction." (citation omitted)); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 173 n.14 (E.D.N.Y. 2010) (declining to "retain jurisdiction over any remaining state law claims plaintiff is attempting to assert given the absence of any federal claims that survive[]" after dismissing plaintiff's federal claims based on the *Rooker-Feldman* doctrine, collateral estoppel, and *res judicata*).

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is dismissed in its entirety pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). The Clerk of Court is respectfully requested to enter judgment and close the case accordingly. Although Plaintiff has paid the filing fee, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
     Brooklyn, New York